FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 27 2005

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

MELVIN SANDERS, AS ADMINISTRATOR
OF THE ESTATE of KEVIN SANDERS, Deceased                    PLAINTIFF

VS.             NO. 4-05 CV00000824 SWW

WILLIAM PATRICK SCOTT, M.D.                                 DEFENDANTS

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

Comes the Plaintiff, Melvin Sanders, as Administrator of the Estate of Kevin Sanders, deceased, and for his cause of action states:

1. Melvin Sanders is the duly appointed Administrator of the Estate of Kevin Sanders, deceased, and brings this cause of action for wrongful death, both individually and on behalf of the estate and the wrongful death beneficiaries of the Estate of Kevin Sanders.

2. Plaintiff's cause of action consists of medical negligence occurring in Yell County, Arkansas. The defendant, William Patrick Scott, is a family practice physician practicing in Yell County, Arkansas. In addition to his family practice, defendant, William Patrick Scott, also provides care to emergency room patients at Dardanelle Hospital in Dardanelle, Arkansas.

3. Plaintiff, Melvin Sanders is a resident of the State of Texas. The decedent, Kevin Sanders, was a resident of the State of Texas at the time of the negligence described herein and at the time of his death.

4. Complete diversity of citizenship exists as between Plaintiff and Defendant, the matter

1

in controversy exceeds the sum of $75,000.00, exclusive of costs and attorneys fees, and jurisdiction of this Court is appropriate by virtue of 28 U.S.C. 1332.

5. That on or about 9:30 p.m. on August 3, 2003, Kevin Sanders presented to the emergency room at Dardanelle Hospital. Mr. Sanders had recently traveled to Hector, Arkansas, to visit the parents of Penny Sanders. Penny Sanders is the mother of his children and under Texas law may constitute the common law wife of Kevin Sanders.

6. At the time of admission, Kevin Sanders was seen by defendant, William Patrick Scott. Mr. Sanders complained of nausea, and shortness of breath and his respiratory rate was elevated. Blood work was ordered which revealed a critical blood glucose of 563. An IV was started and fluids were administered. Despite the fact that Mr. Sanders had signs and symptoms consistent with keto-acidosis, a dangerous medical condition, and despite the fact that Mr. Sanders had not been previously diagnosed with Diabetes, defendant, William Patrick Scott discharged Mr. Sanders from the hospital. At the time of discharge, a repeat lab test indicated that the blood glucose was still dangerously elevated (365). Kevin and Penny Sanders were told by Dr. Scott that Kevin had viral gastroenteritis, and were advised that he could wait until he returned to Texas to follow up with a physician with respect to his diabetes.

7. That after discharge from the emergency room, Kevin and Penny Sanders returned to the home of Penny's parents. For the next several days Kevin remained tired and listless. The evening of August 7, 2003, Penny awakened around midnight and discovered Kevin, laying non-responsive in the bed. Paramedics were called and upon arrival attempted to resuscitate Mr. Sanders, but without success. He was pronounced dead at approximately 1:00 a.m. on August 8, 2003.

8. That the defendant, William Patrick Scott, was negligent in the following respects:

    (a)    Failing to hospitalize Kevin Sanders based on the abnormal laboratory findings;
    (b)    Failing to order blood gas tests;
    (c)    Failing to diagnose diabetic keto-acidosis, a life threatening condition;
    (d)    Misdiagnosing Mr. Sanders as having gastroenteritis; and,
    (e)    Failing to perform an adequate physical examination.

As a direct and proximate cause of the negligence of William Scott, M.D. ( as set forth herein), Kevin Sanders died.

9. That the Plaintiff, Melvin Sanders, individually and as administrator of the Estate of Kevin Sanders, deceased, claims the following damages:

    a)    On behalf of each of the wrongful death beneficiaries, damages for their mental and emotional anguish and pecuniary losses, together will all other damages to which the wrongful death beneficiaries may be entitled; and,

    b)    On behalf of the estate of Kevin Sanders, damages for his mental and emotional anguish preceding his death, funeral expenses, medical expenses, and damages for loss of the value of Kevin's life, together with all other damages to which the estate may be entitled.

10. That unliquidated damages exceeding the current minimum requirement for jurisdiction in diversity of citizenship cases is claimed. Plaintiff furthermore demands a trial by jury.

11. In compliance with A.C.A. 16-114-209, the Plaintiff is filing an affidavit of merit, as attached hereto and marked as "Exhibit One." This filing is done under protest and Plaintiff contends that the statute is an unconstitutional attempt of the legislature to infringe upon the rule

making authority of the Arkansas Supreme Court in violation of Article 4 § 1 and 2, and Article 5 § 25 of the Arkansas Constitution. The statute is furthermore in conflict with the Federal Rules of Civil Procedure.

WHEREFORE, Plaintiff Melvin Sanders, individually and on behalf of the estate and wrongful death beneficiaries of Kevin Sanders, prays that upon trial of this matter reasonable damages be awarded, together with costs and all other relief to which the Plaintiff may be entitled.

                Respectfully Submitted,

                THE BRAD HENDRICKS LAW FIRM
                500 C Pleasant Valley Drive
                Little Rock, Arkansas 72227
                (501) 221-0444
                (501) 661-0196 fax

By: _____
        Lamar Porter  ABN 78128

## Affidavit of Charles Springfield, M.D.

Comes the affiant, and upon being duly sworn states as follows:

My name is Charles Springfield, and I am a medical doctor presently engaged in the practice of emergency room medicine. Attached hereto, marked Exhibit "A" is a copy of my CV which sets forth my education and training as a physician. My area of practice concerns, among other things, providing care to patients who present for evaluation, diagnosis and treatment at emergency rooms, and specifically includes diagnosing and/or treating patients presenting with symptoms of diabetes and complications that may result from patients with abnormally high blood sugar.

In providing this affidavit, I have reviewed emergency room records pertaining to Kevin Sanders from Dardanelle Hospital (dated August 3, 2003), and also an Autopsy Report from the Arkansas State Crime Laboratory. The emergency room physician is identified in the Dardanelle Hospital records as William Scott and licensing information for Dr. Scott indicates he is a family practice doctor (who obviously worked in emergency rooms). As a physician who practices in emergency rooms, I can affirmatively state that I am engaged in the same type of medical care (emergency room medical care) as was being provided by William Scott, M.D. to Kevin Sanders.

Attached hereto, Marked Exhibit "B" is my Medical Record Review dated May 17, 2005, which I adopt and incorporate herein by reference.

I am familiar with the standard of care that would apply to physicians such as William Scott, who are engaged in providing emergency room care in all levels of hospitals (both urban and rural). The basis for my familiarity is:

(a) My training, education and experience in caring for emergency room patients;
(b) My familiarity with medical literature in this area;
(c) My attendance at medical seminars and presentations in this area of medicine;

(d) Conversations with other specialists in this area and my general knowledge as to how other physicians are treating similar patients; and,

In addition, I have reviewed Arkansas Model Jury Instruction 1501 with respect to the legal requirements pertaining to the standard of care.

The standard of care applicable William Scott is the same standard that would apply to any physician providing emergency room care to patients such as Kevin Sanders, regardless of locality. These standards are generally set forth in learned treatises and texts that are used nationwide, taught in medical schools across the United States, and discussed in seminars that are attended by physicians from across the country. My evaluation as to the standard of care is thus based on certain principals of medicine, or standards, that apply nationwide to physicians who provide emergency room care. While I am certified as an emergency room physician, the standards I have applied would pertain to any physician who chose to provide care in an emergency room setting, as well as to any family physician who was seeing a patient in any setting, whether office, inpatient, outpatient, or emergency room. In other words, the basic standard of care would be applicable to any medical doctor, regardless of setting and regardless of specialty.

Based on my review of the information identified herein, it is my opinion, based upon reasonable medical probability, that William Scott, M.D. breached the standard of care in the following respects:

(a) Failing to hospitalize Kevin Sanders based on the abnormal laboratory findings;
(b) Failing to order blood gas tests;
(c) Failing to diagnose diabetic keto-acidosis, a life threatening condition;
(d) Misdiagnosing Mr. Sanders as having gastroenteritis; and,
(e) Failing to perform an adequate physical examination.

Lastly, it is lastly my opinion, that had William Scott, M.D. complied with the standard of care applicable to physicians providing care to patients

in emergency rooms, that more likely than not a diagnosis of diabetic keto-acidosis would have been made and that upon hospital admission appropriate evaluation, treatment, and monitoring (including but not limited to treatment of the elevated blood sugar, re-hydration, additional lab evaluations, blood gas evaluation, monitoring of vital signs, etc.) would have stabilized Mr. Sanders condition, and prevented the continued physical deterioration that he obviously underwent that led to his untimely death. In simple terms, if Dr. Scott had complied with standard of care, Mr. Sanders would not have died.

_____
Charles Springfield, M.D.

Date: 5/23/05

STATE OF FLORIDA   )
                   )
COUNTY OF Palm Beach )

SUBSCRIBED AND SWORN to before me, a Notary Public, this 23 day of May, 2005.

_____
Notary Public

My Commission Expires:

_____

MARCELLE EHRLICH
MY COMMISSION # DD 284869
EXPIRES: May 25, 2008
Bonded Thru Notary Public Underwriters

*Charles L. Springfield M.D., F.A.C.E.P.*
*Diplomat American College of Physicians*
*Diplomat American Board Emergency Medicine*
*Fellow American College of Emergency Physicians*

<u>Curriculum Vitae</u>
*4/16/2005*

**Previous Positions**

**President and CEO**
**Springfield Health Care Consultants**
**Health Care System Consultants**

*Director Emergency Services*
*Aventura Hospital and Medical Center*
*Aventura, Florida*
*10/2003 – 4/1/2004*

*Director Emergency Services*
*California Heart Institute*
*Redding Medical Center*
*1992-2003*

*Vice President*
*Team Health West*
*1997-2003*

*Co-Speaker Western Regional Protocol Development*
    *Director – Robert Fowles, MD FACC University of Utah*
    *Ritz Carlton Hotel*
    *San Francisco, Ca*
    *2002*
    *Member of the IMPACT Study Group*

*To develop consensus based protocols for Treatment of Acute Myocardial Infarction in different resource based medical environments*

**Member Governing Board**
**California Heart Institute**
**Redding Medical Center**
**1998-2003**

**Chief of Staff Elect**
**Redding Medical Center 2001-2002**

**Director Chest Pain Clinic and Evaluation Unit**
**Redding Medical Center**
**1993-2003**

**EMS/Trauma/Air Medical Director**
**AirMed Team Redding Medical Center**
**1992-2003**

**Board of Directors**
**Redding Medical Center Foundation**
**2001-2002**

**Medical Director**
**American Medical Response Ground Ambulance Service**
**Northern California – Shasta County**
**1992-2003**

**Medical Investigator**
**National Registry of Myocardial Infarction 1 and 2**

**President and CEO**
**RMC Emergency Physicians Medical Group**
**C. L. Springfield, MD PC**
**1992-1997**

*Gross Billings $7,500,000.00*

*Payroll Approximately $2,000,000.00*

*1980 – 1992*
*Assistant Director Emergency Physicians*
*Mercy Medical Center*
*Director EMS/Advanced Life Support Trauma and Air Medical Services –*
*Staff Physician*

*1980 - 1987*
*Medical Director*
*Shasta Trinity Rural Indian Health Project*
*Director Hypertension and Diabetes Treatment Clinics*

## Training

*Internship – San Francisco General Hospital*
*Internal Medicine*
*1977-1978*

*Residency – University of California*
*Internal Medicine*
*1978 - 1980*

## Board Certifications

*American Board of Internal Medicine 1980*

*American Board of Emergency Physicians 1987/1997 (recertification)*

*Fellow American Board of Emergency Physicians 1990*

## National Certifications

*National Board of Medical Examiners*

*Part 1 – 99th percentile (top 1%) 1974*

*Part 2 – 99th percentile (top 1%) 1977*

*Part 3 – 99th percentile (top 1%) 1978*

**State Licensures**

*California G38983*

*Florida ME 79249 Control # 91957*

*BNDD # - AS8962614*

**Teaching and Certifications**

*National Affiliate Faculty American Heart Association – Advanced Cardiac Life Support*

*National Affiliate Faculty American Heart Association*
*Advanced Pediatric Life Support*
*Instructor*

*Advanced Trauma Life Support*

*Instructor*
*Advanced Pediatric Life Support*

*Base Station Physician Certification*

*National Faculty Thrombolytic Therapy*
*Genentech*
*1985-1993*

*Medical Director*
*Resuscitation Conference 1993-2002*
*Annual Emergency and Critical Care conference*
*A Medical and Nursing Emergency and Critical Care conference*
*1992-present*

### Memberships

*American College of Emergency Physicians – Fellow*

*California Chapter American College Emergency Physicians*

*National Association EMS Physicians*

*Air Medical Physicians Association (Founding Member AMPA)*

### Education and Awards

*High School*
*Bronx high school of Science*
*New York City, N.Y.*

*Bachelor of Science Degree*
*Magna cum Lauda*
*Phi Beta Kappa*
*Syracuse University*
*1970 – 1974*

*Medical Doctorate (M.D.)*
*New York Medical College*
*1974-1977*

### Honors and Awards

**Top Physicians in America for 2003**
*Named by the*
*Consumer Research Council of America, a non profit public service entity*

*Syracuse University*
*Magna Cum Lauda*
*Phi Beta Kappa*

*New York Medical College*
*Valedictorian*

1488 Estuary Trail Delray Beach Fl. 33483        5
Tel – 5614419722 Fax 5614313214 email cls007@aol.com

*Samuel Spiegel, MD Award* – *"Presented to the student who has attained the highest Scholastic Average in the Class"*

*David Spiro MD Award* – *"Awarded to the Student who has attained the highest achievement in the study of pathology"*

*President*
*Alpha Omega Alpha*
*Honor Medical Society*
*New York Medical College*

*Named:*
*"Who's Who Among Students at American Universities and Colleges"*
*New York Medical College*
*1974*

*Named:*
*"Physician of the Year"*
*Redding Medical Center*
*2002*

## Publications

*Springfield C, Sebat C et al:*
*"Utility of Impedance Cardiography (BioZ ICG) in the Emergency Department to Evaluate Patients with Dyspnea or Systemic Hypotension"*

*Scientific Assembly*
*Abstract Presentation*
*ACEP Scientific Assembly*
*Seattle, WA*
*October 2002*

*Published:*
*Supplement*
*Annals of Emergency Medicine*

*Journal American College of Emergency Physicians*
*Volume 40, Number 4  October 2002*

**Personal Data**

DOB – 5/7/1952

Marital Status – Single

Children –  Adam Springfield
DOB 1/12/1982
Student
University of California Santa Cruz